and the first two arguments of our brief, that is the constitutional issues surrounding the state of mind during instruction and the sufficiency of the indictment as pled, we will rest on the briefs as to the remaining two arguments, the sufficiency of counts three and five and the interstate commerce issue. Good. And is, was COSMA wrongly decided by our court or was? Your Honor, I think it was. All right. And let me amplify on that. Of course, it predates the Black decision. And I think COSMA was focusing on a subjective intent instruction far different than the one requested in this case. In COSMA, the subjective intent instruction or as framed by the court, the subjective intent alternative was an intent to carry out the threat. As the court knows, it was an 871 threat against the president case. The court was very concerned, obviously, about the disruption to government function. And I think actually said in its opinion, this would be more difficult for the prosecution to prove. The subjective intent instruction requested in Alonis and endorsed in some other circuits was not in a subjective intent to carry out the threat. It was simply a subjective intent to threaten. And I think that's an important distinction and it actually distinguishes some other courts that have gone the other way. But there are a lot of, a lot of conditions, caveats that come with that so-called objective test as well. But it's your position that they aren't sufficient to comply with Virginia v. Black. That's correct, Your Honor. I mean, my view is that the Black case spoke in constitutional terms in finding that that prima facie evidence requirement was inappropriate. And it spoke about the speaker's intent and the speaker's meaning in articulating its standard. It seems to me by the plain words of the statute, of the case, it's natural reading, it's going to the subjective intent of the speaker. And tell me, tell me why the objective test is deficient. Why is that constitutionally infirm and why does it not protect against political hyperbole or matters of parody and jokes and stuff like that? Because you have to consider the circumstances, the context, reasonable person, all of that. Where are we left? What is left out in the objective test that you think is constitutionally questionable? The objective test permits the criminalization of a negligent utterance. And I think that's where it runs afoul of the First Amendment. And let me make a point here about the context of this case, Your Honor. This case involved Facebook postings, as you know. Given the explosion in social media, presumably courts are going to see more and more of threat cases in this digital context. As the court, I presume the court knows, these Facebook postings are fragmented. There's not a lot of context. And of course, the audience is somewhat unknown and uncertain. In this case, the alleged victims were not Facebook friends. That means the disjunction between what I as the speaker intend and what the audience or the objective person may perceive, that potentially is greater. What if your client had said exactly what he said on a Facebook post, but instead he had happened upon his ex-wife on Market Street and said the identical things to her face? I think the issue would still be, did he intend to threaten her or not? Now the context... You're saying if he did it on Market Street, he's equally immune from criminal prosecution because he did not subjectively intend to threaten her. Well, Your Honor, I think context is all important. Well, that's why I asked. Is he guilty or not? Well, the jury would have to determine whether from the context and a face-to-face specific interaction certainly is a different, more targeted interaction than a Facebook posting, would have to determine from the words. But it doesn't alter his subjective intent. Well, as I understand your theory, as long as he subjectively intends not to utter a true threat, he's either joking or playing games or whatever. He might just be crazy. As long as he doesn't intend to utter a true threat, then he cannot be convicted of the crime. Yes, Your Honor. By analogy, if I offer to sell you the Brooklyn Bridge and I, in my mind, for whatever distorted reason, in good faith, believe I own the bridge, you may still be out the money, but a good me from a criminal mail fraud conviction or a wire fraud conviction. Similarly, if a jury found beyond a reasonable doubt that the speaker, even on the street, was joking, then yes, that speech should not be criminalized. And that's the demarcation, I think, that the subjective standard versus the objective creates. But what if the jury found on the street that your client wasn't joking? If the jury found that he intended to convey a message which itself conveyed an intent to harm, then he'd be guilty. And just, you know, this is not a greater burden for the prosecution because absent a confession, as in many other cases where subjective intent is the standard, one infers or gets to the intent of the defendant by all the circumstances. On the street versus Facebook, the tone of voice, onlookers, a direct interaction versus shouting out to the crowd, you know, as in the Watts case. If an objective test, though, includes context, circumstances, certain caveats, why... I'm still not sure why that's constitutionally impermissible. Your Honor, because it still permits the imposition of a criminal penalty on a speaker who is merely negligent. And that seems to me to run afoul of the First Amendment. When you think about other categorical areas carved out of the First Amendment, such as defamation or incitement to lawlessness, there's a subjective component to those carve-outs. Circumstantial evidence would be, under your standard, your test, circumstantial evidence would be sufficient to show that intent, I take it? Yes, Your Honor. I don't think this case would vary from any other criminal case in that proposition. Tell me, Counselor, how does that speech constitute negligence, the tort of negligence? Would you explain that to me? Your Honor, when I... I'm sorry. When I refer to negligence, what I mean is that if a speaker carelessly or negligently utters words, negligently thinks these words are not meant to be threatening or wouldn't be construed as threatening, then that leaves it under the objective test to the audience to determine whether he's violated the law or not. That's the context in which I use negligence. Have I answered the question? Yes. I'm not sure I agree with you, but you've answered the question. Thank you, Your Honor. It just seems like such a tricky thing to use the subjective test because couldn't somebody go up to a law enforcement officer like the agent in this case and say, well, she came to the door, right? So next time she comes to the door, your client says to her, I'm going to kill you. And she says, well, thank you very much. You just violated federal law. Come with me. Your client says, well, no, I didn't mean it. I mean, I was hot. I lost control of my temper. I'm a nonviolent person. Look at my record. I've never harmed a puppy. I didn't mean it. It was a negligent utterance. He wins? If a jury bought that story, that evidence, yes. If a jury found beyond a reasonable doubt that he did not have subjectively intent to threaten, why should that be a violation of the criminal law?  Is it fair to crawl into the utterer's mind rather than asking the jury to consider whether it would be objectively reasonable to conclude that, in fact, the statement, I'm going to kill you or I ought to kill you, is a true threat? I think juries do that all the time. And in a defamation case where a jury has to find actual malice, they have to climb into the defendant's mind as well. I mean, most criminal statutes, proof of state of mind is a subjective proof. Same in a mail fraud case. So I don't know that the issue of giving the jury moralist power is really the pivot point here. You know, I see it as what's less likely to chill speech. And it seems to me, Judge Alderser, if this statute embraces negligent utterance, then speakers have to try and figure out what that means and are more likely to be chilled under that objective standard than under the subjective standard. I'd like you to explain the mental process a judge has to go through to determine the subjective intent of the speaker. Would you help me out there, please? Sure. I think, Your Honor, in other criminal cases, the fact finder, be it the judge or the jury, would look to the words themselves. Would look to the circumstances of the interaction. Is it directed toward a person or is it shouted out to the crowd? You know, how it's communicated. Would look to the response of the recipient. In other words, in response to Judge Hardiman's hypothetical, if the FBI agent was truly scared and as a professional took it seriously and thought this was a threat, I think that would be a relevant consideration. All of that ultimately gets wrapped into a determination of whether this speaker intended to threaten. Well, aren't parts of your answer applicable to an objective inquiry rather than subjective? Absolutely. Context is important and it's applicable to both the objective and the subjective standard. But it seems to me at the end of the day, we need to ask the jury to find beyond a reasonable doubt that the speaker intended a threat if we're going to put somebody in jail for his speech. Okay. We put some more time on that. Did you want to address any of the specific counts where you thought that the sufficiency of the evidence was infirm? Your Honor, on that I think we'll rest on the briefs. The other argument we wanted to address, or I wanted to, was the sufficiency of the indictment as it was pleaded. You're saying that they had to have the exact words in the indictment that he stated rather than the general description of what was said. Right. That's correct, Your Honor. And why wasn't what was in the indictment sufficient to put him on notice and to defend? Well, I think there's one other aspect to an indictment. There's the notice piece, but there's also have facts been pled sufficiently so that the trial judge can determine that a reasonable jury could convict and that the grand jury considered all the elements. And it seems to me in this First Amendment context where one needs ultimately to have a true threat that the government should in the indictment and needs to in the indictment include the words of the threat. Indeed, on the motion to dismiss in the court below, the trial judge ultimately determined a reasonable jury could find a true threat. He could not do that on the four corners of the indictment. The government in its briefs proffered what the Facebook postings were, and so he had to go outside the four corners of the indictment to make his ruling. I don't think under the law that's right. I think you're restricted to the four corners of the indictment and the words of the threat should have been articulated. It's no great burden to the government. They do it all the time in all kinds of cases. Why it wasn't done here I don't know, but I think it was required. Is your analysis there congruent with the teaching of the three factors in the United States v. Debrow, the Supreme Court case? Your Honor, I don't know that case. I apologize. The three factors also articulated in Reseda Ponce, namely notice to the defendant and ability to prepare and plead double jeopardy, but then thirdly allowing the trial court to determine whether a reasonable jury could find on the facts and the law make a finding of guilt. Well, the three factors are does it contain the elements of the offense intended to be charged? Does it sufficiently apprise the defendant of what he must be prepared to meet and shows with accuracy to what extent he may plead a former acquittal or conviction in actions where other proceedings are taken against him for a similar offense. That's what Debrow says. Your Honor, I don't think this fairly pleads all of the elements of the offense because imbibing that is a true threat. Okay. Did you raise the specific argument before the district court? I know you challenged the sufficiency of the indictment before trial, but I thought it was on the fact that the indictment did not include the subjective intent to threaten. This issue, Your Honor, was raised below. And appealed and specifically appealed? Yes. All right. Okay. Anything else? No, sir. I assume, Mr. Levine, that you would agree that White, if we were to follow the Fourth Circuit's decision in White, that would be fatal to your argument? Yes, sir. You believe White was wrongly decided? Correct. I would go with the strong dissent by Judge Floyd. And really, as I look at the authorities, on your side of the circuit split to the extent there is one, you've got the Ninth Circuit decision in Bagdasarian in your favor, correct? Correct. Magleby in the 10th and Parr in the 7th touch on the subject, but certainly Cassell and Bagdasarian are the strongest cases for my position. The one from the 7th, when was that decided? Parr was decided in 2008. Because in 04, Fuller said it's an objective test, right? Yes, Your Honor. Parr said that the objective test is likely no longer tenable. This was in 2008. But they didn't rule on it. And I take it you're also endorsing the Ninth Circuit approach of treating threats against the President or a high government official differently from threats to private individuals? Your Honor, fair question. And, you know, the First Amendment logic I'm espousing doesn't necessarily lead you to that conclusion, that an 871 charge should be done differently. But I do understand the point that the President holds a unique role, and perhaps in the First Amendment analysis, you know, he can be treated differently or that crime can be treated differently. Judge Aldersard, any further questions? No, thank you. Good. Mr. Levine, thank you very much. Thank you, Your Honor. Mr. Salzman. Good morning. Good morning, Your Honor. May it please the Court, Robert Salzman on behalf of the government. First, Your Honor, I'd like to thank the Court very much for graciously accommodating my schedule, Judge Aldersard in particular, for serving in the middle of the night. I'm very appreciative. With respect to the issues before the Court, it's our position that the District Court correctly instructed the jury regarding the objective standard that is stated in Cosma. In fact, the words that the judge used in his instructions are verbatim from Cosma. Well, that's the easy part of the case. The hard part is what did Black do to Cosma? Exactly. In Black, the language that I'm struggling with is, I quote, true threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. Why does what I just read not support Mr. Levine's position? Well, that language, in fact, is identical to Cosma, that that is the same expression. And it's very carefully parsed out, as this Court then explained in greater length in Cosma. Means to communicate is the intent. That also defeats Mr. Levine's suggestion that you can have a negligent utterance. You have to have the intent is the intent to state what you're stating. What you're stating, then, is a serious expression of an intent to commit an act of violence. There's a reason that you have all of those words in there. A court could have simply said, you need to subjectively intend to threaten somebody. But it doesn't say that. It says means to communicate a serious expression. So, in other words, the intent is making the statement. And what the statement is, is objective. It's what a reasonable, it's what the speaker reasonably would understand a group of people to think. And what this prevents, and this is fully consistent with the Constitution. What this prevents is exactly what happened in this case. Is a defendant saying, well, yes, I totally understand that everything I'm saying is threatening and is terrifying people. But I'm an artist, or I'm a rapper, or whatever it is that Mr. Alanis had to say. And therefore, I'm not guilty. It's important to look at why true threats are not protected by the Constitution. As we know from Supreme Court teaching, there are a very limited number of categories of speech that are unprotected. But they're there, and we're dealing with one of them. There's fighting words, there's libel, there's profanity, and there's true threats. And the reason true threats are not protected, and in each of these categories, the Supreme Court has said, we're doing a balancing. We see the minimal social utility of what it is you're saying weighed against the harm that might be caused. And we've decided as a categorical matter that this speech is not protected, and true threats is an example. Well, what is the harm? True threats, the harm, of course, is you're terrifying somebody. You're putting them in fear. Miss Morrissey, one of the victims in this case, didn't go to school for two weeks. She was so scared, and found a hiding place that she would have to go to. The other problem is what the reaction might be. It might provoke a violent reaction. Those concerns have nothing to do with the subjective intent of the speaker. They have everything to do with the meaning of his words and how a reasonable person would see them. But if all, if you're correct on that, it would seem that somebody would always be under criminal jeopardy simply by uttering something or by typing something, as Mr. Alonis did. Because once you open your mouth, once you type on the keyboard, you have meant to communicate. That's right. But you're only in criminal jeopardy if you could reasonably foresee that these words would have this effect. And that is a very strong protection. That's why, and I think Judge Sirica suggested this in one of his questions, we're always looking at the context. And that's why in Watts, the Supreme Court case, it's interesting to look at Watts. That's the Vietnam protester, stands up at the Washington Monument and says, you know, if they give me a gun, the first person I'm going to target is the president if I'm drafted. The Supreme Court, in explaining why that's not a true threat, only focused on the reaction of the recipients. Didn't talk about subjective intent at all. The Supreme Court said, it's a political rally. The people laughed. They saw it as funny. The condition that the person stated that was told to the audience was one that the speaker himself said would never happen. He said, if they draft me, I'm never going to show up anyway. So the Supreme Court is saying, you are protected there if you look at the context. And then what we're left with, of course, is a jury issue. But yes, there is criminal responsibility if you say something knowingly, not negligently, and you can reasonably foresee that this could cause harm. It's appropriate for law enforcement to address that. If Mr. Alanis says, I'm going after a kindergarten class, and he said, hell hath no fury, like a crazy man in the kindergarten class. The suggestion here of the appellant is that we walk away. We say, oh, well, he's a rapper. He's upset. And therefore, we walk away because we can't show that he really subjectively means to threaten a kindergarten class. That's not the law. That is unprotected speech to make a true threat like that, that a reasonable person would see the need to respond to and be terrified by. Now, the other important thing to say about Virginia v. Black, Your Honor, is that our argument is really on two levels. One is jurisprudential, which is we do have binding precedent of this court. So far, I've been talking about the merits of whether this is unprotected speech. But it's our view that COSMA has not been reversed and is therefore binding on this panel. The question Your Honor asked, if I understand, is does Virginia v. Black overrule COSMA? And Virginia v. Black isn't even about a threat statute. The court is not asked to address a statute such as Section 875. And so I do want to touch on that for a moment if I can. Virginia v. Black is about cross-burning. And the problem that the Supreme Court identifies there, it says, and we could debate this, but this is what the Supreme Court says, that cross-burning can be constitutionally protected speech. That there are instances of cross-burning that are not intimidating. And they give a movie as an example or some other kind of political expression at a rally. And so the problem in Virginia v. Black was, you had a Virginia statute that said, cross-burning by itself can be enough to be a true threat. And the Supreme Court says, no, that's not true. Because you could have cross-burning that is completely protected. No limitation is placed at all. And it's in that context that the plurality gives those words that Your Honor was quoting. The court is not asked to address at all a threat statute. A threat statute such as 875 does have limitations. As it's been interpreted by this court in Cosma, has the reasonable person limitation. It does place exactly the restriction that the Supreme Court said was wanting in Black. And the restriction is, you have to show that a reasonable person, the speaker would perceive, that a reasonable person would see this as a threat. And so therefore, Virginia v. Black just isn't there. It doesn't address this case. And I think it gives it more weight than it can bear. Even though same appellate courts have disagreed with it. That's right. And the score on that at the moment, as I see it, Your Honor, is the Ninth Circuit has held that it does change the threat definition. And our statement is that it does not get into the nuts and bolts of Virginia v. Black the way I have. The Fourth, Sixth, and Eighth Circuits at the moment all reach a different conclusion than we set those cases in our brief. Mr. Levine says that you can make a negligent statement and still be prosecuted criminally, and that's improper. How is that protected? I didn't understand the argument with all respect to my good friend Mr. Levine. Again, the person has to intentionally make a statement and reasonably foresee that somebody would interpret it. You know, an interesting thing, if you look at the instruction that the defense actually requested in this case, it really was an objective test also. It's on page 44 of the appendix. The first thing it said was a reasonable person would take the statement as a serious expression of intent to inflict bodily injury. That's COSMA. And then the new part that it added was a reasonable person would perceive such expression as being communicated to affect some change or achieve some goal through intimidation. That's objective also, that a reasonable person would understand this person means to threaten and not to do something else. So even in trying to fashion a jury instruction, the defense was unable to write an instruction consistent with precedent that says this person has to subjectively mean to threaten. And therefore, it's clear that this was consistent with the law and there is sufficient constitutional protection. Do you think we should write in that language into the standard here? I don't think it's necessary. I actually think it's somewhat duplicative of what both parties asked for, which is... Was there any... I'm sorry, go ahead. A serious expression of an intent to inflict bodily injury. Okay. And is there anything that you would change in COSMA then? No, I think COSMA was accurately decided. And there's one very important line in COSMA I want to mention that Judge Cowen writes. It's on page 558. And it addresses Mr. Alanis. It says, we are wary of the potential for persons making threats to hide behind the defense that they did not understand their words to be a threat. And so it can always be the case that someone can say, I'm sorry, I just meant something else even though I just said the most vile thing imaginable that terrified everybody within listening distance. Another analogy I could use, if I could take a minute, the classic example of unprotected speech, of categorically unprotected speech is shouting fire in a crowded theater. We've known that for over 100 years. And the same principles apply to that and that they apply to fighting words. It's an objective test. Because somebody cannot stand up in a crowded theater and yell fire and then say, oh, I'm sorry, I didn't mean to cause a riot or incite a catastrophe. I actually was performing my new song called Fire and I decided to introduce it at that moment. That's not a defense because this is categorically unprotected speech and a true threat, meaning a statement that a reasonable person would see as a serious expression of an intent to inflict injury is unprotected for very valid, important reasons. It's not protected by the First Amendment. Some of the cases talk about various concepts such as imminence that they've written into their standards. Does that make sense or do you think that's simply part of the conduct in circumstances? It's one factor to consider. Oh, I think it's definitely a factor to consider and I think that does make sense. Again, it's all about context. The words, I'm going to kill you, spoken by an actor in a movie is not a threat. And spoken seriously face-to-face or even on Facebook can be a threat. And that's where the jury comes in. A properly instructed jury has to look at all the circumstances. Imminence is important, whether it's conditional, what the circumstances are that lead to the statement. Here, the evidence is overwhelming and Mr. Levine isn't arguing today his challenge on those two counts but with respect to all the counts, the evidence is strong. Fact of the matter is, a jury can find subjective intent here also. If we have to retry the case, I'm not that concerned about it but it's not necessary and it would be a significant change in First Amendment law that's not consistent either with the law of this court or of the Supreme Court. The statement again of Virginia v. Black was necessary because they were addressing a statute that swept too broadly and that's not true of the threat statute as narrowly confined by this court. If I could touch on the... Counsel, I have a question that I put to your friend. I'm trying to conceptualize what is meant by negligent speech. Well, all I can understand that he's suggesting there is maybe the person is so careless and foolish that he thinks that what he's saying is not threatening and intimidating to another person and is being negligent about that. But again, that's inconsistent with COSMA which says we look to what a reasonable person would understand his speech to be. And by the way, COSMA is more protective of defendant's rights than the statements expressed in other circuits and we have no objection to that because COSMA looks at the reasonable speaker test meaning the speaker would reasonably understand his words. Other courts have said it's sufficient to just look at the reasonable listener but Mr. Levine is advocating more protection as I understand it which is that somebody could say I'm just foolish and careless. I don't think Mr. Alanis could say it. If you look at the cross-examination of Mr. Alanis at the end of the day he pretty much admitted he knew he was terrifying people but he thought it was okay because he had this quote online persona and that made everything okay because he was using a rap name instead of the name everybody knew him by. How do we, if we have a reasonable speaker test in the third circuit how do we factor in the reasonable listener attributes in a case, I mean are they relevant still? Yes, they are relevant because a reasonable speaker presumes understanding how listeners perceive things so I think it's all part of the same. I think it's a difference in nuance with what the other courts have said but I think it's more protective and that is appropriate because we are supposed to have robust protection of First Amendment rights but not so much that we allow people to do what Mr. Alanis did which is threaten law enforcement, threaten an amusement park threaten elementary school children, his ex-wife and then say sorry these are lyrics. That you can't do. If I may address just the other issue briefly regarding the sufficiency of the indictment, Mr. Levine there is suggesting a standard that doesn't exist. The standard is that the indictment has to be a plain statement of the offense ordinarily statement of the elements are sufficient it has to put the person on notice of what they face and allow them to plead form or jeopardy and that was certainly accomplished here. The language of the indictment parrots the statute, it tells the exact identity of the people being threatened and the dates and that was all that was necessary. They cite a handful of cases in which indictments said more but that doesn't create a requirement that you have to say more that's just what it was done in other cases. Mr. Levine is incorrect I would respectfully suggest in saying that another purpose is to allow a court to evaluate whether there was sufficient probable cause. We know from many Supreme Court cases such as Bank of Nova Scotia that's not the job of a court. A court does not evaluate what the grand jury does except in very limited circumstances and the case they cite Goldstein the end bank decision of this court has nothing to do with pleading requirements. It's all about whether a court can amend an indictment which is a completely different question. This indictment was sufficient and to answer your honor's question Judge Zureka this particular issue was not raised before trial. There was a motion to dismiss the indictment you can look at docket entry number 24. The motion to dismiss the indictment said here are the threats we think the government's going to prove and these aren't threats and our principle response was this is not appropriate pre-trial to evaluate the government's evidence. It was after the trial I think it's docket entry 62 where we had a post-trial motion to dismiss the indictment based on insufficiency. So the rule that applies here as we stated in our brief is that the indictment has to be liberally construed. It can only be rejected at this stage if it just utterly fails to state an offense and that's not the case here. Judge Aldersart any questions? No sir, thank you. Mr. Zalzmus, thank you very much. Mr. Levine. Your Honor, Mr. Zalzmus is correct that the second issue was raised on post-trial motions. I thought that's what I had answered but if I misunderstood the question I stand corrected. First of all, Your Honor, Mr. Zalzmus cites the Watts. The Watts case itself expresses in its text quote unquote grave doubts whether willfulness merely requires a voluntary utterance with apparent determination to execute the threat. So there's a harbinger of virginity black way back in 1969 and cites the Judge Skelly Wright dissent in the lower case. Mr. Levine, what do you say to Mr. Zalzmus' argument that the only way you can prevail is in front of the court on bank in light of the fact that black did not overrule Cosmo? Your Honor, I simply disagree. Black and for Mr. Zalzmus to say the Cosmo language and the black language is identical, I frankly don't understand that. I mean Cosmo specifically talks about reasonable person and Virginia v. Black talks about what the speaker means. The rest of the language is very similar. Did Virginia v. Black cite Cosmo? I don't think it did, Your Honor. So how did it overrule Cosmo? Well I mean it certainly has something to say. It has an impact. I mean that was my first question to him but so I'm with you there but how does it overrule Cosmo? Well because it's applying a constitutional standard to threat, criminal threat statutes and it seems to me that extends to the Cosmo case now. What about the, Mr. Zalzmus said but look at the issue on Virginia v. Black is that cross burning could either be benign under certain circumstances or it could be an expression of political solidarity however heinous that might be and so and it also can be very threatening so the court needed to put some other language in there and we don't have that kind of situation in the normal true threat case. Well to take Mr. Zalzmus' remark about I'm an artist, if somebody says that Your Honor, why shouldn't that go into the jury's determination of whether that person intended to utter a threat or not? In other words, that is preeminently the First Amendment defense and subjective intent then should come into play. And your view is that cannot be evaluated you know whether it's hyperbole or artistic or something else that cannot be evaluated properly by a jury under the objective? I think that's right, Your Honor. I think it steers the jury away from that. In fact, in this case the trial judge explicitly said it's not necessary to prove that the defendant intended the statement to be a true threat. It's not necessary. So the jury's pushed away from that issue, Your Honor. So I don't think the objective standard embraces that. All right. Any other questions? I see my time is up. Thank you, Your Honor. Thank you. Thank you very much. Case was extremely well argued. Thank you. Take the matter under advisement. We thank counsel. We can close it down.  Thank you.